UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN ROCK, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>Defendant. | Case No.: 1:12-cv-01019-JMS-DKL |

**PLAINTIFF'S SUR-SURREPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

## I. INTRODUCTION

The Seventh Circuit's decision in *Messner v. Northshore Univ. HealthSystem* requires that this Court permit Plaintiff to amend his class definition at the certification stage rather than "flatly deny[] class certification."[1] Ignoring this binding precedent, the NCAA continues to argue that Plaintiff must show "good cause" to amend his class definition. As discussed below, even assuming that were the correct standard, Plaintiff has shown good cause and the NCAA's additional arguments to the contrary are meritless.

## II. ARGUMENT

**A. The NCAA Concedes that Plaintiff's Amendment Will Cause It No Undue Prejudice Because No Additional Discovery Is Necessary.**

A defendant opposing a motion to amend a class definition on the ground that it will be prejudiced by the need to conduct additional discovery must show "specific additional discovery that it will seek if Plaintiffs' motion is granted."[2] In its original opposition, the NCAA argued that it would be prejudiced because the supposedly "new" factual issues raised by Plaintiff's complaint required "additional" discovery from unnamed "third parties."[3] In his reply, Plaintiff pointed out that the NCAA had not specified the additional discovery that it purportedly needed. Indeed, during the entire course of this litigation, the NCAA had not obtained any third-party discovery, which Plaintiff asserted was because the NCAA *never* subpoenas its own member institutions or conferences – the only third parties with any conceivable relevant information. In its proposed surreply, the NCAA again suggests that it will need to take additional discovery on

---

[1] 669 F.3d 802, 825 (7th Cir. 2012), *reh'g denied*, 2012 U.S. App. LEXIS 4778 (7th Cir. Feb. 28, 2012).

[2] *Giuliano v. SanDisk Corp.*, 2014 WL 4685012, at *5 (N.D. Cal. Sept. 19, 2014).

[3] Opp'n at 12-13 [Filing No. 117 at 16-17].

"ascertainability,"[4] but again fails to specify what discovery it would take. Having now been given two opportunities to identify the additional discovery that it supposedly needs and having twice failed to do so, the NCAA has effectively conceded that it does not actually intend to take any additional discovery if Plaintiff's motion is granted. Therefore, Plaintiff's amendment will cause no prejudice to the NCAA and his motion to amend should be granted.

**B.     NCAA's Assertion that Plaintiff "Admits that He Has Taken No Discovery that Would Allow Him to Identify [] Class Members" Is False.**

The NCAA claims that Plaintiff admits that "he has taken no discovery that would allow him to identify" class members.[5] That assertion is false. Dr. Rascher proposes a detailed methodology for identifying class members using NCAA squad lists. In fact, Appendices G & H to his report list class members names, schools and GIA reduction amount. The NCAA's assertion is based on nothing more than Dr. Rascher's observation that NCAA member institutions may have more detailed information in the form of "Official Visit Lists."[6] However, Dr. Rascher concluded that such lists were not necessary because he could construct a proxy list of class members using squad lists produced by the NCAA. *Id.* If the NCAA desires to obtain "Official Visit Lists," then Plaintiff will draft and jointly serve subpoenas with the NCAA.

**C.     Plaintiff Does Not Impermissibly Conflate Market Definition and Class Definition Because in an Antitrust Case Class Definition Depends on the Market Definition.**

The NCAA argues that Plaintiff's motion to amend should be denied because it "attempt[s] to conflate the purpose of a *market* definition (*i.e.*, identifying groups of alleged buyers and sellers) and a *class* definition (*i.e.*, identifying specific individuals supposedly injured

---

[4] Proposed Surreply at 2 [Filing No. 130-1 at 4].

[5] Proposed Surreply at 2 [Filing No. 130-1 at 4].

[6] *See generally* Expert Report of Daniel A. Rascher on Class Certification ¶¶ 538-547 [Filing No. 110].

- 2 -

by the alleged wrongdoing."[7] The NCAA's argument is misguided. In an antitrust case, market definition and class definition are obviously related because a class generally cannot include individuals who do not participate in the relevant market or submarket.[8]

Here, Plaintiff's expert analysis with respect to the market necessitated changing the class definitions. Dr. Rascher determined that the FBS submarket consisted not only of students *attending* FBS schools but also students *recruited* by FBS schools. That necessitated defining the "Core Issues Class" to include not only students attending FBS schools but also those recruited by FBS schools.[9] In short, the NCAA's assertion that changes in submarket definition have "no bearing"[10] on class definition changes is demonstrably incorrect.

**D. The Discovery Issues Identified in the Reply Provide Good Cause for Plaintiff's Amendment.**

The NCAA makes several speculative arguments that Plaintiff might have been able to amend his complaint earlier. As discussed *supra*, because the amendment will not cause the NCAA undue prejudice, it is irrelevant whether Plaintiff theoretically might have been able to amend his complaint slightly earlier. In any case, the NCAA's arguments are meritless.

*First*, the NCAA's suggests that Plaintiff should have "expedited" his review of the squad lists.[11] As described in Mr. Kurowski's declaration, Plaintiff and his expert analyzed the squad lists as quickly as possible.[12] Plaintiff's counsel hired over 120 data entry specialists to convert

---

[7] Proposed Surreply at 1 [Filing No. 130-1 at 3].

[8] *See Rozema v. Marshfield Clinic*, 174 F.R.D. 425, 434 (W.D. Wis. 1997) (noting that market definition is "necessary for class certification").

[9] *See Rozema v. Marshfield Clinic,* 176 F.R.D. 295, 300 & 301 (W.D. Wis. 1997) (permitting plaintiffs at class certification stage to "redefined their proposed class definition" and "clarif[y]" the proposed market).

[10] Proposed Surreply at 2 [Filing No. 130-1 at 4].

[11] Proposed Surreply at 3 [Filing No. 130-1 at 5].

[12] Kurowski Declaration at ¶ 2 [Filing No. 126-1].

- 3 -

the NCAA squad lists into a useful format.[13] Once converted, these lists were immediately provided to Plaintiff's expert, Dr. Rascher, whose staff then spent an additional 300 hours further converting the data into a machine readable form that could be used for economic analysis.[14] The NCAA's assertion that Plaintiff's expert could have accomplished this more quickly is meritless speculation. Equally meritless is the NCAA's suggestion that analyzing "only a subset" of the squad lists could have more rapidly identified "any deficiency with the prior class definition."[15] The NCAA provides no evidence that such an analysis would have been feasible or reliable. Nor would it be efficient or appropriate for Plaintiff to amend his class definition based on partial analysis, which might later be revisited.

*Second*, the NCAA claims that Plaintiff "fails to explain why analysis" of the documents it produced in November was "necessary."[16] That is inaccurate. As outlined in Dr. Rascher's declaration, he specifically requested this data to complete his analysis.[17] Once obtained, the data showed that imposition of the anticompetitive restraints in the 1970s had an immediate and common impact "across Division I (prior to the split into FBS/FCS) and then FBS once that split occurred."[18] This further supported the conclusion that the "Core Issues" class definition required modifications to focus on FBS recruited students.

*Finally*, the NCAA argues that the filing of the *Chamorro* case (which this Court declined to relate to this case) should make the Court "skeptical of Plaintiff's claim that he could

---

[13] *Id.*

[14] Rascher Declaration at ¶ 9 [Filing No. 126-6]

[15] Proposed Surreply at 3 [Filing No. 130-1 at 5].

[16] Proposed Surreply at 4 [Filing No. 130-1 at 6].

[17] Rascher Declaration at ¶¶ 11-12 [Filing No. 126-6].

[18] *Id.*

not know his definition was unworkable until his expert completed his analysis."[19] The NCAA's logic is hopelessly flawed. As the NCAA acknowledges, Durrell Chamorro was a former FBS athlete. In contrast, Plaintiff Rock was recruited by FBS schools. The damages class definition in the *Chamorro* case (like the damages class in the current *Rock* complaint) included players *attending* both FBS and FCS institutions.[20] In contrast, the proposed third amended complaint – drafted in response to Plaintiff's expert's analysis – defines the class to include only FBS *recruited* players.[21] Thus, contrary to the NCAA's assertions, the filing of the *Chamorro* complaint in no way suggests that Plaintiff knew that his damages class should be limited to FBS recruited players and, in fact, is inconsistent with such a supposition.

### III. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that his motion to amend his complaint be granted.

DATED: December 22, 2014                HAGENS BERMAN SOBOL SHAPIRO LLP

By   */s/ Steve W. Berman*
         STEVE BERMAN

1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

---

[19] Proposed Surreply at 5 [Filing No. 130-1 at 7].

[20] *Chamorro v. NCAA*, No. 1:14-cv-01421-RLY-DML (S.D. Ind. August 28, 2014) at ¶ 93.

[21] Proposed Third Amended Complaint at ¶ 85 [Filing No. 114-1].

Elizabeth Fegan (*Pro Hac Vice*)
Daniel J. Kurowski (*Pro Hac Vice)*
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 W. Lake Street, Suite 400
Oak Park, IL 60301
Telephone: (708) 628-4960
Facsimile: (708) 628-4950
beth@hbsslaw.com
dank@hbsslaw.com

Jeff Friedman (*Pro Hac Vice)*
Jon King (*Pro Hac Vice)*
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com
jonk@hbsslaw.com

Stuart Paynter (*Pro Hac Vice*)
Sara Willingham (*Pro Hac Vice)*
THE PAYNTER LAW FIRM PLLC
1200 G Street N.W., Suite 800
Washington, D.C. 20005
Telephone: (202) 626-4486
Facsimile: (866) 734-0622
stuart@smplegal.com
swillingham@smplegal.com

William N. Riley
Joseph N. Williams
James A. Piatt
PRICE WAICUKAUSKI & RILEY, LLC
Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317)633-8787
Facsimile: (317) 633-8797
wriley@price-law.com
jwilliams@price-law.com
jpiatt@price-law.com

*Attorneys for Plaintiff*

- 6 -

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2014, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

                                                                              */s/ Steve W. Berman*
                                                                              STEVE W. BERMAN