UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JOHN ROCK, *on behalf of himself and all others similarly situated*, )
    *Plaintiff*, )
)   1:12-cv-1019-JMS-DKL
  *vs.* )
)
NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, )
    *Defendant*. )

## ORDER ON PLAINTIFF'S MOTION TO DISQUALIFY

Presently pending is Plaintiff John Rock's Motion to Disqualify the assigned District Judge. [Filing No. 122.] Mr. Rock filed this action against Defendant National Collegiate Athletic Association ("NCAA") in July 2012. [Filing No. 1.] He now asks that I disqualify myself as the presiding judge because I joined Butler University's Board of Trustees in June 2013. [Filing No. 122; Filing No. 123.] Mr. Rock claims that this has resulted in a conflict requiring disqualification pursuant to 28 U.S.C. §§ 455(a), (b)(1), and (b)(4) because Butler University ("Butler") is a Division I football program with the NCAA. [Filing No. 123.] The NCAA opposes Mr. Rock's request, [Filing No. 134], and the parties have now fully briefed the motion, [Filing No. 135].

### I.
#### RELEVANT BACKGROUND

To put Mr. Rock's request and my ruling in context, the following background is relevant. In 2011, I presided as the District Judge on *Agnew v. National Collegiate Athletic Association*, which was an antitrust action brought by the same counsel who now represent Mr. Rock. *Agnew v. Nat'l Collegiate Athletic Ass'n*, Cause No. 1:11-cv-293-JMS-MJD. Ultimately, the Seventh Circuit Court of Appeals affirmed my decision to dismiss Plaintiff Joseph Agnew's claims with prejudice because he had failed to plead a legally cognizable market to support his antitrust claim.

*Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328 (7th Cir. 2012). It also affirmed my decision to deny Mr. Agnew another chance to amend his complaint. *Id.* at 347-48.

Mr. Rock filed this antitrust putative class action against the NCAA on July 25, 2012. [Filing No. 1.] He filed a substantially similar Amended Complaint before the NCAA answered, [Filing No. 20], and the NCAA moved to dismiss the Amended Complaint, [Filing No. 21]. I granted the NCAA's motion to dismiss, in relevant part, after concluding that Mr. Rock, like Mr. Agnew, had failed to allege a legally cognizable relevant market. [Filing No. 38 at 11-16.] On March 1, 2013, I dismissed Mr. Rock's claims without prejudice, but gave him an opportunity to move to amend his complaint if he could show good cause for doing so. [Filing No. 38 at 23.]

On March 28, 2013, Mr. Rock moved to amend his complaint, [Filing No. 39], which the NCAA opposed, [Filing No. 42]. On May 24, 2013, I granted Mr. Rock's motion and the Second Amended Complaint became the operative complaint in this matter. [Filing No. 46.] I specifically noted that I "[did] not find Mr. Rock's proposed amendment to be futile" and that "justice requires giving Mr. Rock a final chance to amend his complaint." [Filing No. 45.] Mr. Rock's Second Amended Complaint specifically challenged "(i) the NCAA's prohibition on multi-year Division I football scholarships, and (ii) its unlawful caps on the number of football Division I football scholarships that can be awarded by Division I member institutions." [Filing No. 46 at 12.] It proposed the following putative class:

> Any individual who, while enrolled in an NCAA member institution, (i) received a scholarship, grant or tuition discount ("Grant in Aid" or "GIA") based on athletics leadership, ability, participation or performance from an NCAA member institution for at least one year for the purpose of playing Division I football, (ii) had their GIA reduced or not renewed and (iii) subsequently paid tuition at a college, university or other institution of higher education.

[Filing No. 46 at 22.]

On June 10, 2013, the NCAA moved to dismiss Mr. Rock's Second Amended Complaint. [Filing No. 47.] The parties briefed that motion, and on August 16, 2013, I denied the NCAA's Motion to Dismiss. [Filing No. 58.] I held that, for the first time in this litigation, the complaint at issue "pleads the rough contours of a relevant market that is plausible on its face and in which anticompetitive effects of the challenged regulations could be felt." [Filing No. 58 at 1.] Because Mr. Rock alleged sufficient factual allegations to support an antitrust claim that is plausible on its face, I denied the NCAA's motion and ordered the parties to proceed with the litigation. [Filing No. 58.]

The parties jointly submitted a proposed Case Management Plan ("CMP") on August 22, 2013, in which Mr. Rock characterized his claims as follows:

> Plaintiff challenges the National Collegiate Athletic Association ("NCAA") rules which prohibited multi-year athletic scholarships for Division I football players and the continuing cap on the number of football scholarships a Division I football team may award. By unlawfully agreeing not to offer multiyear Division I football scholarships, the NCAA and its member institutions ensured that student-athletes who were injured or who simply did not meet the school's expectations could be cut from a team and their scholarships terminated. By unlawfully agreeing to limit the number of Division I football scholarships that a member institution can grant in any given year, the NCAA and its member institutions have ensured that student-athletes in the class receive tens of millions less for their labor for member institutions than they would receive – and the member institutions would pay – in a competitive market.

[Filing No. 60 at 3.] The parties' proposed CMP was approved by the magistrate judge. [Filing No. 60 at 4.]

In the fifteen months since denying the NCAA's Motion to Dismiss Mr. Rock's Second Amended Complaint, the parties have proceeded with discovery and I have not made any dispositive rulings. On November 23, 2014, Mr. Rock filed a Motion For Class Certification. [Filing No. 104.] He filed his supporting memorandum the following day, [Filing No. 111], and also filed a Motion for Leave to File a Third Amended Complaint "solely for the purpose of conforming the

class definition to the definitions set forth in [his] Motion For Class Certification," [Filing No. 114]. On December 8, 2014, the NCAA filed a Response in Opposition to Mr. Rock's Motion for Leave to File a Third Amended Complaint, claiming that Mr. Rock's "new proposed classes are much broader and introduce factual questions not previously at issue in this case." [Filing No. 117 at 5.] The NCAA requested expedited consideration because until the amendment issue was resolved, it claimed to be "prejudiced in formulating its opposition and in providing its expert with guidance regarding the proposed class definition." [Filing No. 117 at 7.] Moreover, the deposition of Mr. Rock's expert was scheduled for December 17, 2014. [Filing No. 117 at 7.] To attempt to keep the pending deadlines and deposition on schedule, I gave Mr. Rock until Friday, December 12, 2014—three business days—to file a reply supporting his motion to amend. [Filing No. 119.] Mr. Rock moved to vacate the shortened reply deadline, citing it as unnecessarily restrictive, and asking that he receive until Monday, December 15, 2014. [Filing No. 120] I denied this request because the "timing of plaintiff's motion to amend in the context of other activity in the litigation has necessitated an abbreviated reply deadline." [Filing No. 121.]

Two days later, on December 11, 2014, Mr. Rock filed the pending Motion to Disqualify. [Filing No. 122.] I asked the assigned Magistrate Judge to conduct a status conference with the parties to determine the effect of Mr. Rock's Motion to Disqualify, if any, on the other pending deadlines and scheduled discovery. [Filing No. 125.] The assigned Magistrate Judge conducted a status conference on December 16, 2014, and set a briefing schedule for Mr. Rock's Motion to Disqualify. [Filing No. 132.]

On January 5, 2015, after the parties briefed the Motion to Disqualify, I requested that Chief Judge Richard L. Young reassign Mr. Rock's Motion for Leave to File a Third Amended Complaint, [Filing No. 114], the NCAA's Motion for Leave to File a Sur-Reply in Opposition,

[Filing No. 130], and all supporting briefs and exhibits to another District Judge pursuant to 28 U.S.C. § 137, [Filing No. 136]. I did so after noting that arguments Mr. Rock made in support of his disqualification request assumed that he would be granted leave to amend his complaint, which had not yet been determined. [Filing No. 136.] Given the substantial relationship between the Motion to Amend and the Motion to Disqualify, I followed an approach cited favorably by the Seventh Circuit Court of Appeals and requested that the Motion to Amend and corresponding filings be reassigned to another District Judge "to avoid any appearance of impropriety in the effect of that motion on the disqualification request." [Filing No. 136 at 1 (citing *In re Specht*, 622 F.3d 697, 699-700 (7th Cir. 2010)).]

Chief Judge Young reassigned Mr. Rock's Motion to Amend and the corresponding filings to himself pursuant to 28 U.S.C. § 137. [Filing No. 137.] He granted both parties leave to file sur-replies, [Filing No. 138], and the parties did so, [Filing No. 139; Filing No. 140]. All briefing on Mr. Rock's pending Motion for Class Certification was stayed in the interest of justice to allow the motion for leave to be considered. [Filing No. 138 at 2.] On January 23, 2015, Chief Judge Young granted Mr. Rock's Motion for Leave to File Third Amended Class Action Complaint. [Filing No. 142.] As a result, Mr. Rock's Third Amended Complaint is the operative complaint governing these proceedings, [Filing No. 143], and it is now proper for me to address his disqualification request.

## II.
### DISCUSSION

Mr. Rock requests that I disqualify myself as the presiding judge in this litigation pursuant to three subsections of 28 U.S.C. § 455. First, Mr. Rock requests disqualification pursuant to 28 U.S.C. § 455(a) because he believes that a reasonable observer might question my impartiality to preside over this litigation since I am a member of the Butler Board of Trustees and Butler is a

Division I football school with the NCAA. [Filing No. 123 at 13-17.] Second, Mr. Rock requests disqualification pursuant to 28 U.S.C. § 455(b)(1) because my position as a Butler Trustee has allegedly given me personal knowledge of disputed evidentiary facts in this litigation. [Filing No. 123 at 17-18.] Third, Mr. Rock requests disqualification pursuant to 28 U.S.C. § 455(b)(4) because of Butler's alleged interest in the outcome of this litigation, which he contends is imputed to me as a Trustee. [Filing No. 123 at 18.]

The NCAA opposes Mr. Rock's disqualification request. [Filing No. 134.] Throughout its response, it emphasizes a fact of which I was already aware—Butler does not award any football scholarships to its student-athletes. [Filing No. 134 at 4-5.] Thus, the NCAA contends that none of Butler's student-athletes could be members of Mr. Rock's proposed classes and that any effect this proceeding could have on Butler's interests would at most be remote and speculative. [Filing No. 134 at 6-10.] The NCAA also argues that a reasonable observer, informed of all relevant facts, would not question my impartiality because said observer would know that this is a case about Division I football scholarships, which Butler does not award. [Filing No. 134 at 10-12.]

In his reply, in addition to reasserting various arguments made in his opening brief, Mr. Rock disputes the NCAA's arguments that no Butler football players could be members of the classes proposed in his Third Amended Complaint or that Butler could not be subject to the injunctive relief he now seeks. [Filing No. 135 at 6.] Thus, Mr. Rock maintains that because Butler could be substantially affected by the outcome of this litigation, a reasonable observer could question my impartiality to continue to preside over the litigation. [Filing No. 135 at 10-15.]

### A. Applicable Statutes

28 U.S.C. § 455(b)(1) requires me to disqualify myself if I have "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(4) requires me to disqualify myself if "individually or as a fiduciary," I have "a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."

28 U.S.C. § 455(a) provides that a judge "shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." The purpose of the statute "is to preserve the appearance of impartiality." *Weddington v. Zatecky*, 721 F.3d 456, 461 (7th Cir. 2013). "When a busy federal judge concentrates his or her full attention on a pending case, personal concerns are easily forgotten. The problem, however, is that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges. The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864-65 (1988). Recusal is required under § 455(a) "whenever there is a reasonable basis for a finding of an appearance of partiality under the facts and circumstances of the case." *In re United States*, 572 F.3d 301, 308 (7th Cir. 2009). The reasonable observer contemplated in § 455(a) is a well-informed, thoughtful observer, and disqualification decisions should not be made "at first glance." *In re Taylor*, 417 F.3d 649, 653 (7th Cir. 2005). "[N]eedless recusals exact a significant toll; judges therefore should exercise care in determining whether recusal is necessary, especially when proceedings already are underway. A change of umpire mid-contest may require a great deal of work to be redone and facilitate judge-shopping." *In re United States*, 572 F.3d at 308 (quotation omitted).

### B. Mr. Rock's Second Amended Complaint

When I became a Butler Trustee, Mr. Rock's Second Amended Complaint was the operative pleading in this litigation. [[Filing No. 46](#) (filed May 2013).] This remained so until January 23, 2015, when Chief Judge Young granted Mr. Rock leave to file his proposed Third Amended Complaint. [[Filing No. 142](#).] But Mr. Rock's arguments in favor of disqualification assumed that he would be granted leave to file his proposed Third Amended Complaint. Specifically, Mr. Rock emphasized his belief that some Butler football players would be included in the putative classes proposed in the Third Amended Complaint and that Butler would be substantially impacted by his request for injunctive relief. [*See, e.g.*, [Filing No. 135 at 6](#).] Even though Mr. Rock did not specifically argue that I should have recused myself from presiding over the claims set forth in his Second Amended Complaint, given the challenge to the propriety of my service on this case, I will address the issue anyway.

To be clear, nothing that has been the subject matter of Mr. Rock's claims as they have proceeded before me has ever been a topic at a Butler Trustee meeting during my tenure on the Board. This is likely because Butler is a member of the Pioneer Football League, which does not award athletics-based scholarships. *See* Pioneer Football League Website, [http://www.pioneer-football.org/pfl](http://www.pioneer-football.org/pfl) (PFL is "the nation's only non-scholarship, football-only NCAA Football Championship Subdivision conference"). Mr. Rock's claims, as they have proceeded before me, hinged on the availability and issuance of football scholarships. [*See* [Filing No. 46 at 12](#) (Mr. Rock's Second Amended Complaint challenging "(i) the NCAA's prohibition on multi-year Division I football scholarships, and (ii) its unlawful caps on the number of football Division I football scholarships that can be awarded by Division I member institutions").] The proposed class definition in his Second Amended Complaint was as follows:

> Any individual who, while enrolled in an NCAA member
> institution, (i) received a scholarship, grant or tuition discount
> ("Grant in Aid" or "GIA") based on athletics leadership, ability,
> participation or performance from an NCAA member institution
> for at least one year for the purpose of playing Division I football,
> (ii) had their GIA reduced or not renewed and (iii) subsequently
> paid tuition at a college, university or other institution of higher
> education.

[Filing No. 46 at 22.] Because Butler does not award football scholarships, its student-athletes who play football could not have been part of the putative class Mr. Rock proposed in the Second Amended Complaint. Likewise, Butler would not have been substantially impacted by the relief Mr. Rock sought because Butler itself—as a non-scholarship football program—would not have reduced or declined to renew a football scholarship. [Filing No. 46 at 27.]

Because I do not have personal knowledge regarding any disputed evidentiary fact at issue in Mr. Rock's action, and because Butler did not have an interest that could be substantially affected by the outcome of Mr. Rock's claims as they have proceeded before me, disqualification under 28 U.S.C. § 455(b)(1) or 28 U.S.C. § 455(b)(4) would have been inappropriate.

Additionally, based on the circumstances at hand, I cannot conclude that a well-informed, reasonable, thoughtful observer would have questioned my impartiality regarding the proceedings over which I presided, as governed by Mr. Rock's Second Amended Complaint. Instead, a well-informed, reasonable observer would realize that I presided over an action which, by Mr. Rock's own words, challenged NCAA practices regarding Division I football scholarships, which Butler does not award. Thus, disqualification pursuant to 28 U.S.C. § 455(a) would have been unwarranted at that time.

### C. Mr. Rock's Third Amended Complaint

On January 23, 2015, Chief Judge Young granted Mr. Rock's request to amend his complaint. [Filing No. 142.] Mr. Rock filed his Third Amended Complaint that same day. [Filing

No. 143.] Mr. Rock now seeks relief on his own behalf and on behalf of two classes. First, Mr. Rock proposes an "Injunctive Relief Class" defined as follows:

> All individuals who, from December 17, 2007 to the present, have been classified under NCAA rules as an "initial counter" (during their first fall term on campus or in the spring term prior to their first fall term on campus) on an NCAA Division I football team;

[Filing No. 143 at 22.] Mr. Rock also proposes a "Core Issues Class" defined as follows:

> All individuals who, from December 17, 2007 to the present, have been classified under NCAA rules as an "initial counter" (during their first fall term on campus or in spring term prior to their first fall term on campus) on an NCAA Division I football team, and
>
> (1) were recruited by at least one school that is a member of the NCAA's Division I Football Bowl Subdivision ("FBS") (at the time of their recruitment or during their period of NCAA athletics eligibility), and
>
> (2) did not receive their initial year's athletics-related grant-in-aid for the full duration of their undergraduate education or five (5) years, whichever is shorter.

[Filing No. 143 at 22.] Based on the allegations in his Third Amended Complaint, particularly with respect to the Injunctive Relief Class as set forth in his Motion for Class Certification, Mr. Rock now seeks injunctive relief prohibiting:

> 1. the implementation or enforcement of any rule capping the number of GIAs a school can offer for each team in a given year;
> 2. the implementation or enforcement of any rule limiting the term of any GIAs;
> 3. discussions between the NCAA and/or among its member institutions regarding the number, monetary value, or term of GIAs they may or may not offer.

[Filing No. 104 at 3.]

In support of his disqualification request, Mr. Rock contends that based on his expert's analysis, seven Butler football players are classified as "initial counters" and, thus, are members

of his proposed Injunctive Relief Class.[1] [Filing No. 123 at 7.] Mr. Rock also contends that Butler would be substantially affected by the injunctive relief he now seeks on behalf of the putative class. [Filing No. 123 at 4-5.]

The NCAA disputes both of these arguments. [Filing No. 134 at 4-5 (disputing that any Butler football players could be members of the Injunctive Relief Class); Filing No. 134 at 8-9 (arguing that Butler would not be substantially impacted by any injunctive relief awarded).] Specifically, the NCAA contends that Mr. Rock "simply misunderstands Division I rules" and that no Butler football players would be members of his putative Injunctive Relief Class because they are exempt from the "initial counter" requirements of the NCAA Bylaws. [Filing No. 134 at 5.] The NCAA further contends that Butler would not be affected by any injunctive relief that Mr. Rock seeks because Butler has chosen not to award football scholarships, which is akin to the Division III practice of not awarding athletic-based scholarships in any sport, and which was found to be procompetitive as a matter of law in a previous decision. [Filing No. 134 at 8 (referencing Filing No. 38 at 21).]

It remains true that nothing related to Mr. Rock's newly characterized claims has ever been a topic at a Butler Trustee meeting during my tenure on the Board. Again, this is likely because Butler is a member of the Pioneer Football League, which does not award athletics-based scholarships. Moreover, I have had no communication with President Danko about his involvement on

---

[1] In his reply brief, Mr. Rock claims that "*all* Butler football players are members of the Injunctive Relief Class" and that according to his expert, "several Butler football players are members of the Core Issues class." [Filing No. 135 at 11.] It is unclear why Mr. Rock's arguments regarding the number of Butler football players allegedly included in each proposed class changed, but this distinction is immaterial as it does not change my conclusion that the parties dispute whether any Butler football players could be included in either of the proposed classes.

the NCAA President's Advisory Council. I continue to lack any personal knowledge as to the impact of the amended allegations on Butler or its football players.

That said, the parties' briefs make it clear that in light of the Third Amended Complaint, there is now a dispute regarding whether any Butler football players could be members of the putative classes and whether Butler would be substantially affected by the injunctive relief Mr. Rock now requests. Although these issues were not present in the case before, they are now, and they exist solely because of my role as a Butler Trustee.

Under the circumstances, I think it best that those issues be eliminated from the case, and that I recuse myself. The parties' time and resources are better spent litigating the merits of Mr. Rock's claims instead of further litigating the impact of the case on Butler or questioning my motivation for any future rulings. I have considered the policies articulated by the Seventh Circuit concerning the potential impact on the case of changing umpire mid-contest, but given the amended complaint and its potential to significantly expand the issues, both a new judge and I would have to get up to speed. As for the Seventh Circuit's other stated concern regarding judge-shopping, I will let the record speak for itself. So, to invoke the relevant vernacular, I will punt, sending this case to one of my eminently qualified colleagues.

### III.
#### CONCLUSION

For the reasons explained herein, I conclude that there would have been no basis for me to recuse myself from presiding over Mr. Rock's claims as set forth in the Second Amended Complaint. Because he has been granted leave to file the Third Amended Complaint, however, and because the parties dispute whether any Butler University football players are members of the newly-proposed putative classes and whether Butler University would be substantially affected by

the requested injunctive relief, I **RECUSE** myself pursuant to 28 U.S.C. § 455(a). [Filing No. 122.] I direct this action be returned to the Office of the Clerk for **RANDOM REAS-SIGNMENT** to another District Judge.

January 29, 2015

*Hon. Jane Magnus-Stinson, Judge*
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

All Electronically Registered Counsel of Record